### UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

SALLY S. WHITE,

        Plaintiff,

v.

OAKLAND COMMUNITY COLLEGE.,

        Defendant.

_____/

Case No. 19-10465

Honorable Nancy G. Edmunds

### ORDER AND OPINION GRANTING
### DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [29] [30]

In this reverse race discrimination case, Plaintiff, a white female, claims she was improperly passed over for a promotion by her employer, Defendant Oakland Community College, in favor of an allegedly lesser qualified black female candidate. Pending before the Court is Defendant's motion for summary judgment. (ECF No. 29.) Plaintiff opposes the motion. (ECF No. 47.) The Court finds that its decision process would not be significantly aided by oral argument. Therefore, pursuant to Eastern District of Michigan Local Rule 7.1(f)(2), Defendant's motion will be decided on the briefs and without oral argument. For the reasons set forth below, the Court **GRANTS** Defendant's motion for summary judgment.[1]

## I.    Background

Defendant is a community college operating on five campuses in Oakland County, Michigan. On February 8, 2018, Defendant began the hiring process for a full-time paraprofessional position in the Academic Support Center at its Orchard Ridge Campus.

---

[1] Also pending before the Court is Plaintiff's Motion for Spoliation Sanctions. (ECF No. 30.) That motion is **DENIED as MOOT.**

In this lawsuit, Plaintiff, a white female, claims Defendant discriminated against her in violation of Title VII by selecting an African American candidate to fill the position instead of Plaintiff.

At the time of the job posting for the full-time position at the Orchard Ridge Campus, Plaintiff was employed as a part-time paraprofessional in the Academic Support Center (or "ASC") at Defendant's Southfield Campus.  All of Defendant's campuses employ at least one ASC Paraprofessional.  According to the parties, the job description for the position does not vary from campus to campus.  The ASC Paraprofessional duties include a broad range of testing administration, including determining student eligibility for placement testing, administering placement tests, and administering make-up tests for instructors and others.  ASC Paraprofessionals also have duties related to tutors and supplemental instructors, such as overseeing their activities and hours, preparing and monitoring paperwork and submitting payroll for them, and gathering, inputting, and reporting data concerning student use of the services tutors and supplemental instructors provide.  And the ASC Paraprofessionals are responsible for assisting faculty with the scheduling, use, and repair of instructional equipment and in ordering supplies and preparing maintenance work orders for the Academic Support Center.  Because of these responsibilities, Defendant classifies the ASC Paraprofessional job at Level IV, the second highest level covered by the Classified Master Service Agreement.[2]  Plaintiff, as a part-time ASC Paraprofessional, had experience performing all of these same duties.

Defendant formed a search committee to fill the open Orchard Ridge Campus ASC Paraprofessional position.  The committee was led by Mary Ann Sheble, the College's

---

[2] The CMA is a collective bargaining agreement that governs, among other things, the hiring process for positions with Defendant.

Dean of Learning Resources.  It also included Vicki McNiff, Orchard Ridge Counseling Faculty; Liza Nemitz; Orchard Ridge ASC Faculty; and Nadja Springer Ali, Orchard Ridge Library Faculty.  The position was open to internal bidders only, meaning only persons employed by Defendant could apply.  Plaintiff submitted a bid to be considered for the position, but because she was not one of the six most senior bidders, she was initially not afforded an interview.  The committee interviewed the six most senior bidders.  Two were African American women.  Ultimately, the committee selected Doree Nowack, a white female, for the position.  Ms. Nowack initially accepted the position, but later chose to return to her previous position after ninety days in accordance with her rights under the CMA.

In June 2018, after Ms. Nowack withdrew from the position, Defendant reposted the job opening.  Defendant reformed the same search committee.  And Plaintiff reapplied for the position.  This time, because she was one of the six most senior applicants, she was afforded an interview.  In advance of the interviews, Defendant's human resources department prepared a list of the six most senior applicants ranked in order of seniority. The list identified each applicant's seniority date.  It was provided to Dean Sheble.  Plaintiff was the fourth most senior candidate on the list.  Crystal Young-Collins, the committee's ultimate selection for the position, was the second most senior candidate.  Plaintiff asserts that it was improper for the human resources department to provide this list to the search committee.

On Friday June 22, 2018, the search committee interviewed five candidates (a sixth in the selected pool of applicants withdrew before the interview).  The committee utilized a prepared list of questions in conducting the interviews.  They asked the same

fourteen questions to each applicant and compared the answers.  The Committee also received and reviewed application packets for each candidate.  And the Committee considered the candidates' scores on computer skills.

Ultimately, the committee selected Crystal Young-Collins for the position.  Ms. Young-Collins is an African American female and was the second most senior candidate. After selecting Ms. Young Collins, Dean Sheble prepared a memo comparing Ms. Young-Collins' qualifications with the qualifications of another applicant, Corine Fikes.  The parties dispute the reason for this memo: Defendant claims the memo discusses the differences between the two most qualified candidates, while Plaintiff states that the memo was required by the CMA because Corine Fikes was the most senior applicant.[3] On June 25, 2018, Defendant hired Ms. Young-Collins for the Orchard Ridge ASC Paraprofessional position.

Plaintiff claims that she was the most qualified applicant for the position and that Defendant's decision to hire Ms. Young-Collins was improperly based on race.  Plaintiff asserts that she was the only applicant who had prior experience as an ASC Paraprofessional and that she already was performing all of the same duties in her current role as a part-time ASC Paraprofessional.  She points out that she demonstrated exemplary performance in her part-time ASC Paraprofessional role, and that Dean Sheble had previously praised her prior job performance.  Plaintiff also believes that she interviewed exceptionally well for the position.  In contrast, Plaintiff claims that Ms. Young-Collins was less qualified, did not have same level of experience required for the position,

---

[3] Defendant notes that Corine Fikes is also African American.

4

and unlike Plaintiff, lacked experience performing the specific duties of an ASC Paraprofessional.

Defendant does not really dispute that Plaintiff was qualified for the position. In fact, Defendant ultimately offered a different full-time ASC Paraprofessional position to Plaintiff a few months after filling the Orchard Ridge opening. Notwithstanding, Defendant presents evidence that Ms. Young-Collins was selected for the Orchard Ridge position over Plaintiff because the committee believed Ms. Young-Collins performed the best of all the candidates during the interview. Defendant also presents some evidence indicating that the committee members may not have believed Plaintiff performed well during her interview. And Defendant argues that the summary judgment evidence establishes that the committee believed Ms. Young-Collins was the most qualified candidate for the position even though, in contrast to Plaintiff, she lacked experience performing all of the specific duties of an ASC Paraprofessional.

Plaintiff claims that Defendant's proffered reasons for not selecting her, and for choosing Ms. Young-Collins, are pretextual. Plaintiff personally disagrees with the committee members testimony suggesting that they felt she did not interview as well as Ms. Young-Collins. And she argues that the committee members assessment of Plaintiff's interview conflicts with the feedback she received from Dean Sheble following the interview.[4] According to Plaintiff, Dean Sheble invited Plaintiff to her office to provide

---

[4] In opposition to Defendant's motion, Plaintiff submits a transcription of a secret recording of an alleged post-interview feedback session between Dean Sheble and Plaintiff. The parties dispute the probative value of the recording and the transcription. They also disagree about the admissibility of this evidence. And Defendant argues that the recording should not be considered because Plaintiff failed to timely produce it during discovery. The Court has reviewed the evidence and finds that it is not necessary at this stage to rule on its admissibility. Even if the recording itself is inadmissible, Plaintiff would certainly be able to testify about what Dean Sheble allegedly said to her at the feedback session. More importantly, even if the Court accepts as true Plaintiff's interpretation of the recording, as discussed below, Plaintiff fails to establish the first prong of her *prima facie* reverse race discrimination case.

feedback on Plaintiff's interview.  During this feedback session, Dean Sheble allegedly told Plaintiff that seniority was the primary reason the position was awarded to Ms. Young-Collins.  Plaintiff claims that Dean Sheble did not identify any issues with Plaintiff's performance at the interview, which would directly conflict with Defendant's proffered reasons in this case for its hiring decision.  Plaintiff additionally points out that she notified Dean Sheble at the feedback session that Plaintiff intended to file a lawsuit and that it was not until receiving this notice that Dean Sheble began to comment on Plaintiff's alleged poor performance during her interview.  Finally, Plaintiff contends that the committee members' interview notes do not describe any problems with Plaintiff's interview, thus potentially raising questions of fact about the true reason for not selecting Plaintiff.

When Plaintiff was not offered the full-time ASC Paraprofessional position at the Orchard Ridge campus, she remained in her position as a part-time paraprofessional in the ASC at the Southfield Campus.  A few months later, Defendant posted a job opening for another full-time paraprofessional position, this time in the ASC at the Highland Lakes Campus.  After going through the application process, Plaintiff was offered the position. Plaintiff accepted the offer and on October 22, 2018 her transfer to that position became effective.  Plaintiff notes that she was not the most senior candidate interviewed for this position.

Notwithstanding ultimately receiving a promotion to a full time ASC Paraprofessional position, on February 14, 2019, Plaintiff initiated this lawsuit claiming that Ms. Young Collins was improperly afforded the ASC Paraprofessional Position at the Orchard Ridge Campus because of race.  In her complaint, Plaintiff asserts a claim for

race discrimination under Title VII.[5]   Plaintiff does not offer direct evidence of racial discrimination to support her claim.  She also does not present evidence indicating that Defendant even considered the race of any candidate in making its hiring decision. However, as indirect or circumstantial evidence of race discrimination in this case, Plaintiff claims that "Defendant has adopted as a policy an effort to increase diversity, including racial diversity, among its staff."   Plaintiff contends that Defendant's alleged policy to "increase diversity" was the driving force behind Defendant's decision to hire Ms. Young-Collins instead of Plaintiff.  As evidence of this purported diversity policy, Plaintiff submits a May 2019 report submitted to Defendant's board that calls for, among other things, working "to remove barriers and recruit a diverse applicant pool for positions; maintain a commitment to diversity and inclusion through staff hiring and retention, particularly in the areas of the College that could benefit from it the most."

On February 21, 2020, Defendant moved for summary judgment.  The motion has been fully briefed by the parties and is ripe for consideration.

## II.    Summary Judgment Standard

"Summary judgment is proper only if the moving party shows that the record does not reveal a 'genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Benison v. Ross*, 765 F.3d 649, 658 (6th Cir. 2014) (quoting FED. R. CIV. P. 56(a)).  A genuine issue of material fact exists when there are "disputes over facts that might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  But "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue

---

[5] The Court previously declined to exercise supplemental jurisdiction over Plaintiff's state law claim for alleged violations of the Elliot Larson Civil Rights Act.

for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citing *First Nat. Bank of Ariz. v. Cities Servs. Co.*, 391 U.S. 253, 289 (1968)).

In addition, once the moving party has met its burden, the non-moving party must make a "showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Bormuth v. Cty. of Jackson*, 870 F.3d 494, 503 (6th Cir. 2017). The non-moving party must present some evidence in support of its complaint to defeat a motion for summary judgment and show that a genuine issue for trial exists—i.e., that a reasonable jury could return a verdict for the non-moving party. *See Anderson*, 477 U.S. at 248.

### III.    Analysis

Neither party relies on direct evidence of discrimination. The Court therefore reviews Plaintiff's Title VII employment discrimination claim under the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Under this framework, Plaintiff must first demonstrate a *prima facie* case of discrimination. If Plaintiff makes the required showing, Defendant must offer a legitimate, non-discriminatory reason for the adverse action, or in this case for denying Plaintiff the promotion in favor of Ms. Young-Collins. Then, the burden shifts back to Plaintiff to show that Defendant's proffered reasons are pretext for discrimination.

The Sixth Circuit applies a slightly modified approach to the *prima facie* case for reverse race discrimination claims under Title VII. *See Thompson v. City of Lansing*, 410 Fed. Appx. 922, 932 (6th Cir. 2011). Under this modified approach, a plaintiff must demonstrate: (1) background circumstances supporting the inference that plaintiff's

employer was the unusual employer who discriminated against non-minority employees, (2) that the plaintiff suffered an adverse employment action, (3) that the plaintiff was qualified for the position, and (4) that the plaintiff was treated disparately from similarly situated minority employees. *Id.*; *see O'Donnell v. City of Cleveland*, 838 F.3d 718, 726 (6th Cir. 2016). Here, the parties dispute the first and fourth prongs. And the Court need only address the first prong because Plaintiff fails to present evidence of background circumstances indicating that Defendant is the unusual employer who discriminates against non-minorities. *Nelson v. Ball Corp.*, 656 F. App'x 131, 136–37 (6th Cir. 2016).

Past cases provide numerous examples of what constitutes background circumstances sufficient to satisfy the first prong of the modified *prima facie* case for reverse race discrimination claims. A plaintiff may show the requisite background circumstances by using evidence of the defendant's unlawful consideration of race as a factor in hiring "which justifies a suspicion that incident of capricious discrimination against whites because of their race may be likely." *Goller v. Ohio Dept. of Rehab. & Corr.*, 285 Fed. App'x 250, 255 (6th Cir. 2008). *See also Sutherland v. Mich. Dep't of Treasury*, 344 F.3d 603, 615 (6th Cir. 2003) (holding that "significant evidence in the form of statistical data" showing that the employer considered race in previous employment decisions satisfied the first prong for the purposes of overcoming the employer's summary-judgment motion). A plaintiff may be able to establish "background circumstances" by establishing that the person responsible for making the adverse employment decision demonstrated favoritism towards persons of his or her own racial minority group. *See Morris v. Family Dollar Stores of Ohio, Inc.*, 320 F. App'x 330, 340 (6th Cir. 2009) (holding that sufficient background circumstances existed when a Hispanic manager replaced a Caucasian

9

employee with a Hispanic employee); *Zambetti v. Cuyahoga Cmty. Coll.*, 314 F.3d 249, 257 (6th Cir. 2002) (holding that a Caucasian applicant alleging reverse race discrimination could satisfy the first prong by showing that an African American police chief favored the promotion of African Americans). And at least one court has found the first prong to be satisfied where the plaintiff produces evidence of "an organizational preference for establishing a diverse group of employees." *See Sampson v. Sec'y of Transp.*, No. 98–5669, 1999 WL 455399, at *1 (6th Cir. June 23, 1999) (unpublished).

None of the relevant circumstances described in the aforementioned cases exists here. There is no evidence that Defendant considered race as factor in making its hiring decision for the full-time ASC Paraprofessional position at the Orchard Ridge Campus. There is no evidence that Dean Sheble or the other members of the search committee are African American. There is no evidence that they considered or discussed race in their hiring process. And there is no statistical or historical evidence that Defendant unlawfully considered race in past employment decisions.

The May 2019 report concerning the promotion of racial diversity is not sufficient to satisfy the first prong of Plaintiff's *prima facie* case. The report is dated May 2019— almost a year after Defendant completed the interview and hiring process for the Orchard Ridge position. The report on its face does not contain any action items or directives concerning Defendant's hiring practices. And Plaintiff fails to explain how this 2019 report creates an inference that Defendant or the committee members actually considered race in selecting Ms. Young-Collins over Plaintiff. To this end, there is no evidence that any of the committee members knew about this report; there is no evidence that the committee members were aware of a policy to promote racial diversity; and there is no evidence that

the committee members considered the race of the applicants in connection with their hiring process for the Orchard Ridge position.  Indeed, such a contention is belied by the committee's original decision to award the position to a white candidate over two African American candidates.

In sum, there is no evidence of any background circumstances suggesting that Defendant is the unusual employer that discriminates against the majority.  There is also no evidence that Defendant or the committee considered the race of the applicants in connection with its hiring process for the Orchard Ridge full time ASC Paraprofessional position.  Plaintiff's failure to satisfy this essential element of her case obviates the need for any further analysis of her reverse discrimination claim. *See Nelson*, 656 F. App'x at 136-37 (6th Cir. 2016).

## IV.    Motion for sanctions

The Court has granted Defendant's motion for summary judgment and disposed of all of Plaintiff's claims in this dispute.  The Court finds that Plaintiff's motion for spoliation sanctions (ECF No. 30) should be denied as moot.

## V.    Conclusion

For the foregoing reasons, Defendant's motion for summary judgment (ECF No. 29) is **GRANTED**.  Defendant's motion for spoliation sanctions (ECF No. 30) is **DENIED AS MOOT**.

**SO ORDERED.**

<u>s/Nancy G. Edmunds</u>
Nancy G. Edmunds
United States District Judge

Dated:  October 6, 2020

I hereby certify that a copy of the foregoing document was served upon counsel of record on October 6, 2020, by electronic and/or ordinary mail.


<u>s/Lisa Bartlett</u>
Case Manager